IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALI JOOBEEN, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA POLICE | : | |
| DEPARTMENT, et al., | : | |
|     Defendants. | : | NO. 09-1376 |

GENE E.K. PRATTER, District Judge                                            MARCH 4, 2010

## MEMORANDUM

*Pro se* Plaintiff Ali Joobeen brings this action against various defendants, including the Philadelphia District Attorney's Office, former Philadelphia District Attorney Lynne Abraham, and Assistant District Attorneys Jennifer Kralle and Kristen M. DeYoung (collectively, the "DA Defendants"). Mr. Joobeen asserts numerous federal constitutional violations and violations of Pennsylvania state laws stemming from an incident that allegedly occurred in February 2008 in which Philadelphia police officers allegedly entered and searched Mr. Joobeen's apartment, and then confiscated a vehicle allegedly owned by Mr. Joobeen that was parked outside his apartment building.

Presently before the Court is the DA Defendants' 12(b)(6) motion to dismiss to which Mr. Joobeen has filed a 106-page opposition brief. For the reasons explained below, the Court will grant the DA Defendants' motion to dismiss.

## I.     STATEMENT OF ALLEGED FACTS

For the purposes of evaluating this Motion to Dismiss, the facts alleged in Mr. Joobeen's

Complaint are considered to be true. However, because it is not entirely clear what precise claims Mr. Joobeen alleges in his 152-paragraph Complaint,[1] the following facts are those relevant to the pending motion that the Court can glean from an indulgent review of the Complaint.

On or about February 8, 2008, plain clothes Philadelphia police officers entered Mr. Joobeen's apartment located in Penn Valley, Pennsylvania, after being granted access to the apartment by a building employee. (Compl. ¶ 12-13.) Ceil Joobeen, a relative of Mr. Joobeen's who resided in the same apartment building, saw the police officers enter Mr. Joobeen's apartment. (Id. ¶ 13.)

Mr. Joobeen alleges that while they were inside his apartment, the police officers searched through his papers, belongings, and computer. (Id. ¶ 14.) The police officers then left Mr. Joobeen's apartment without taking any items, went to a private car park outside the apartment building, and requested the assistance of a Philadelphia Police Department tow truck to tow a car allegedly owned by Mr. Joobeen. (Id. ¶ 15.) Ceil Joobeen, who watched these events unfold, called Mr. Joobeen and informed him that his car was about to be towed. (Id. ¶ 16.)

Mr. Joobeen returned home and encountered the police officers, who told him that they were going to take the car to Philadelphia for storage and inventory because they suspected that the car had been involved in a crime. (Id. ¶ 18.) In response, Mr. Joobeen told the officers that the car was his; he gave the officers documentation allegedly evidencing his ownership of the car. (Id.)

---

[1] Throughout the Complaint, Mr. Joobeen uses the term "Defendants" without identifying the specific persons he is referencing.

The officers allegedly took these documents, went to their car, and called their immediate supervisors and the "District Attorney's Office (Nuisance Task Force)." (Id. ¶ 19.) The officers informed Mr. Joobeen that they were going to keep his documents, and told him that if he wanted the documents back, he would have to go to the 39th Police District. (Id.) The police officers proceeded to tow the car and, in the process, allegedly damaged the car and taunted Mr. Joobeen. (Id. ¶¶ 22-24.)

Mr. Joobeen called the Montgomery County Police Department and the District Attorney's Office to get his papers and car back, but was given the "run around for a number of weeks." (Id. ¶¶ 26, 31.) He alleges that he wrote a number of letters asking for information about his belongings, but received no response. (Id. ¶ 32.)

In June 2008, Ceil Joobeen received a letter from the DA's Nuisance Task Force indicating that the car allegedly belonging to Mr. Joobeen was subject to a forfeiture action. (Id. ¶ 34.) Mr. Joobeen subsequently intervened in the forfeiture action. (Id. ¶ 35.)[2]

Mr. Joobeen alleges, among other things, that he was systematically harassed and intimidated by the police officers and the District Attorney's Office because of his race (he states that he is a person with a "Muslim name and a minority'), and that, on several occasions, these police officers, "as a matter of policy, and with the authorization of their bosses and the encouragement of the District Attorney's Office entered [his] home without a valid search warrant and without [his] consent." (Id. ¶ 49.) He also alleges that as a direct result of "Defendants' actions," he lost his car, in what amounts to a theft and governmental taking. (Id. ¶ 60.)

---

[2] The state court dockets indicate that Mr. Joobeen has participated in the state court forfeiture proceedings. (See Defs.' Ex. C, Dockets from the Court of Common Pleas of Philadelphia County.)

## II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley, 355 U.S. at 47), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. To survive a motion to dismiss, a complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

The Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 551 U.S. 308, 322 (2007); Ieradi v. Mylan Labs., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000) ("Under Federal Rule of Evidence 201, we may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.").

The review of the sufficiency of Mr. Joobeen's *pro se* complaint, "however inartfully pleaded," is less stringent than that of pleadings prepared by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A *pro se* complaint may be dismissed for failure to state a claim only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (citing Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 335 U.S. 41, 45-46 (1957)). At the same time, *pro se* litigants must "abide by the Federal Rules of Civil Procedure and when confronted by motions to dismiss must articulate reasons why the motions should not be granted." Nanya-Nashut ex rel. Hand v. BankOne, No. 03-4022, 2003 WL 22120263, at *2 (E.D. Pa. Sept. 9, 2003) (internal citation and quotation omitted).

III. **DISCUSSION**

    A. **Federal Claims**

It appears that Mr. Joobeen asserts his federal claims against the DA Defendants in both their individual and official capacities.

5

1. **Individual capacity claims**

    a. **Direct involvement**

Prosecutors enjoy absolute immunity from liability for civil damages for actions related to the prosecution of a criminal case. Imbler v. Pachtman, 424 U.S. 409, 422-24 (1976). Prosecutors are entitled to absolute immunity from suit only for acts within the scope of their duties in initiating and pursuing a criminal prosecution. Id. at 410. Even if the prosecutor's malicious or dishonest acts deprive a wronged defendant of liberty, that defendant is without any civil redress against the prosecutor. Id. at 427.

When prosecutors institute and pursue a forfeiture action, they are afforded absolute prosecutorial immunity because, in so doing, they are fulfilling a quasi-judicial prosecutorial function. Schrob v. Catterson, 948 F.2d 1402, 1411-13 (3d Cir. 1991); Banda v. Burlington County, 263 Fed. Appx. 182, 183 (3d Cir. 2008) ("[P]rosecutors are absolutely immune from liability related to their initiation of [] forfeiture proceedings."). In Schrob, the Court of Appeals for the Third Circuit reasoned that a prosecutor's initiation of an in rem civil proceeding for forfeiture of criminal property was absolutely immune from suit because it was "intimately connected with the criminal process," and because an owner of the property would have sufficient opportunity to challenge the legality of the proceeding. 948 F.2d at 1411-12.

Here, Mr. Joobeen alleges that the DA Defendants are not entitled to prosecutorial immunity because he is suing them in their administrative capacities as members of the Nuisance Task Force. (Comp. ¶ 5.) However, the acts that Mr. Joobeen alleges that the DA Defendants performed in filing and maintaining a forfeiture action against the car (see Compl. ¶¶ 34-35) fall squarely within the DA Defendants' quasi-judicial, prosecutorial function, as recognized in Schrob. Accordingly, to the extent Mr. Joobeen alleges individual capacity claims against the

DA Defendants based on their direct involvement in the forfeiture proceedings, such claims are barred by absolute prosecutorial immunity. For the same reason, Mr. Joobeen's allegation that the DA Defendants engaged in a conspiracy to deprive him of his rights by filing and maintaining a forfeiture proceeding also fails. See Hull v. Mallon, No. 00-5698, 2001 WL 964115, at *1 (E.D. Pa. Aug. 21, 2001) ("When the underlying activity is cloaked with prosecutorial immunity, a conspiracy claim is similarly precluded.").

b. **Supervisory liability for failure to train**

A supervising authority may be liable under § 1983 for failing to train employees "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Establishing municipal liability on a failure to train claim is difficult because a plaintiff "must identify a failure to provide specific training that has a causal nexus with [plaintiff's] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

For the most part, Mr. Joobeen complains of actions allegedly performed by Philadelphia police officers, not by the DA Defendants. It does not appear that the DA Defendants had any control over the police officers in this case, nor does Mr. Joobeen's Complaint identify any specific supervisory practice that the DA Defendants failed to employ in connection with the alleged improper search of Mr. Joobeen's home and seizure of the vehicle. Rather, the Complaint contains only vague conclusory allegations, such as "policymakers were deliberately indifferent to the need for further training and failed to provide such training." (Compl. ¶ 81; see also Compl. ¶¶ 70, 80, 81, 93.) As a matter of law, these allegations are insufficient to state a

7

claim. See Cruz v. City of Philadelphia, No. 07-493, 2007 WL 4190690, at *3 (E.D. Pa. Nov. 21, 2007) (dismissing Section 1983 claim for supervisory liability where plaintiff's complaint "does not allege any specific supervisory practice that [District Attorney] Abraham failed to employ in connection with the decision to prosecute").

### c. Policymaker liability

The standard of liability for individual policymakers under Section 1983 is the same as the standard for municipalities. Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999). A municipality and its officers may be liable under § 1983 when the "execution of a government's policy or custom, . . . [which] may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978). In addition to proving that an unlawful policy or custom existed, a plaintiff must also show that such a policy or custom was the proximate cause of the alleged injuries. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

Mr. Joobeen alleges that the actions taken by the DA Defendants and the police officers "were taken in accordance with Philadelphia policy" and "pursuant to a custom of discrimination so persistent, widespread, common, and well-settled that it amounted to City wide policy." (Compl. ¶¶ 74, 79; see also Compl. ¶¶ 85, 90, 92.) However, Mr. Joobeen has failed to identify or describe any specific policy or custom of the District Attorney's Office that led to the alleged constitutional deprivations. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."); Jordan v. Appeldorn, No. 00-1717, 2000 WL 1100786, at *2 (E.D. Pa. Aug. 1, 2000) ("[T]he complaint does not specify a 'statement, ordinance, regulation, or decision officially adopted and promulgated by' the District Attorney which caused

8

or authorized the allegedly unconstitutional conduct at issue in this case.") (internal citation omitted)).[3]

### 2. Official capacity claims

Mr. Joobeen appears to assert official capacity claims against the Philadelphia District Attorney's Office, former District Attorney Abraham, and Assistant District Attorneys Kralle and DeYoung. A suit against a city official named in her official capacity is a suit against the entity she represents. Hafer v. Melo, 502 U.S. 21, 27 (1991). The Philadelphia District Attorney's Office, however, is not a separate legal entity for the purposes of § 1983, and, therefore, cannot be sued under § 1983. Reitz v. County of Bucks, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability"); Domenech v. City of Philadelphia, No. 06-1325, 2007 WL 172375, at *2 (E.D. Pa. Jan 18, 2007) ("Plaintiffs' § 1983 claims against the district attorney's office cannot stand because the [Philadelphia] District Attorney's office is not an entity that can be sued under 28 U.S.C. § 1983.").

Thus, because the Philadelphia District Attorney's Office must be dismissed, the official capacity claims against former District Attorney Abraham and Assistant District Attorneys Kralle and DeYoung must also be dismissed.

---

[3] In addition, only those municipal officers and employees who have final policymaking authority can by their actions subject their municipal employers to § 1983 liability. Kis v. County of Schuykill, 866 F. Supp. 1462, 1479 (E.D. Pa. 1994) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). Under Pennsylvania law, only the District Attorney possesses policy-making authority for the District Attorney's Office. See Jordan, 2000 WL 1100786, at *3 ("ADA Daisey is not a policymaker who can create or authorize official procedures or practices."). Thus, to the extent Mr. Joobeen alleges policy-making claims against Assistant District Attorneys Kralle and DeYoung, these claims fail because they are not policymakers.

B. **State Law Claims**

Mr. Joobeen's Complaint also appears to assert state law claims against the DA Defendants for, among other things, trespass, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress. As high public officials, former District Attorney Abraham and Assistant District Attorneys Kralle and DeYoung are also immune from these state law claims. See Cherry v. City of Philadelphia, No. 04-1393, 2004 WL 2600684, at *7 (E.D. Pa. Nov. 15, 2004) ("Defendant Abraham also is immune for these claims because, under Pennsylvania law, a 'high public official' such as herself is 'immune from suits seeking damages for actions taken or statements made in the course of [her] official duties.'") (internal citation omitted)); Durham v. McElynn, 772 A.2d 68, 70 (Pa. 2001) (holding that assistant district attorney enjoyed the absolute immunity accorded high public officials because "[t]o subject assistant district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous or the most judgment-proof from vigorously performing their prosecutorial functions . . ."); Domenech, 2007 WL 172375, at *4 ("[U]nder Pennsylvania law, ADA Rubino is entitled to absolute immunity from state law tort claims.").[4]

---

[4] To the extent Mr. Joobeen seeks injunctive relief, this claim fails because Mr. Joobeen does not allege any plausible future harm based on the past actions he alleges the DA Defendants performed. See O'Shea v. Littleton, 414 U.S. 488, 495-94 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse effects.").

10

## IV. CONCLUSION

For the foregoing reasons, the Court grants the DA Defendants' Motion to Dismiss. An appropriate Order will follow.[5]

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court is granting the DA Defendants' Motion to Dismiss on immunity grounds, the Court need not consider the DA Defendants' alternative arguments for dismissal.